UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

MELISA BUSH,                          )
                                      )        Case No. 2:17-cv-04070-BCW
            Plaintiff,                )
                                      )
     v.                               )
                                      )
GREAT CIRCLE,                         )
                                      )
            Defendant.                )

**PLAINTIFF'S UNOPPOSED COMBINED MOTION FOR FINAL**
**SETTLEMENT APPROVAL AND MEMORANDUM IN SUPPORT**

Named Plaintiff Melisa Bush, on behalf of herself and a class defined below, by and through her attorneys, respectfully moves the Court to issue an Order:

1. Finally approving the parties' settlement as being fair, reasonable, adequate and in the best interests of class members and a fair and reasonable resolution of *bona fide* dispute under the Fair Labor Standards Act ("FLSA"), the Missouri Minimum Wage Law ("MMWL"), and Missouri common law;

2. Directing the parties and settlement administrator to administer the settlement in accordance with its terms;

3. Approving Name Plaintiff Bush's service award per the terms of the parties' settlement agreement;

4. Approving the payment of attorneys' fees, costs and expenses per the terms of the parties' settlement agreement; and

5. Entering final judgment pursuant to Fed. R. Civ. P. 54 in this action dismissing all of the Plaintiffs' claims, the class action claims and the collective action claims on the merits with prejudice.

1

A copy of the parties' executed Class Action Settlement Agreement ("Settlement Agreement") was previously filed under seal, pursuant to leave of Court. The declaration of Plaintiff's attorneys, Mark Potashnick and Eli Karsh, in support of this motion are attached as "Exhibit 1" and "Exhibit 2," respectfully. The settlement administrator's declaration is attached as "Exhibit 3."

## MEMORANDUM IN SUPPORT

The parties have reached a settlement on behalf of Plaintiff, a class comprised of Defendant's current and former Foster Care Case Managers ("FCCMs") who were employed between at any time between May 4, 2015 and September 15, 2018, and a collective action class comprised of all FCCMs who previously opted-in to the FLSA claim. The settlement meets the standards for final approval of a class action settlement and approval of an FLSA collective action settlement.

### Basic Facts and Procedural History

On May 4, 2017, Plaintiff filed a claim alleging that Great Circle failed to pay its FCCMs overtime wages in violation of the FLSA, 29 U.S.C. § 201 *et seq.,* by misclassifying them as "exempt" from the FLSA; alleging that Great Circle failed to pay overtime wages in violation of the Missouri Minimum Wage Law ("MMWL"), R.S. Mo. § 290.500 *et seq.*, also based on misclassification; and asserting claims for unpaid wages under Missouri common law theories of breach of contract, *quantum meruit* and unjust enrichment.

Great Circle denied all material allegations of Plaintiff's complaint, and asserted an affirmative defense based on exemption from wage and hour laws. Through subsequent discovery, Great Circle later revealed its reliance on the "administrative, professional and combination exemptions" to the overtime pay requirements of the FLSA and MMWL.

Plaintiff's counsel thoroughly investigated the claims through numerous telephone and in-person interviews of FCCMs who have worked at all of Great Circle's offices throughout Missouri,

2

including a day trip to Columbia, Missouri to meet with FCCMs in persons. They collected several declarations verifying Great Circle's treatment of FCCMs' and Great Circle's failure to capture all work time during a "time keeping experiment." Plaintiff's counsel also reviewed voluminous documents produced by Great Circle. Plaintiff propounded thorough written discovery, and vigorously pursued efforts to compel additional production. Docs. 35 & 40.

Per 29 U.S.C. § 216(b), Plaintiff filed a motion to conditionally certify a collective action comprised of all Great Circle's FCCMs. Doc. 17. The Court granted that motion on February 6, 2018. Doc. 26. A total of 23 FCCMs joined the collective action, including Named Plaintiff Bush.

The parties first mediated for a full day on August 18, 2017 with an experienced and well-respected wage and hour mediator, Teresa Woody. However, they were unable to resolve the claims at that time. The parties again mediated with Ms. Woody for a full day on July 3, 2018, but again they were unable to resolve the claims. Through multiple rounds of follow-up negotiations conducted through Ms. Woody over the next six weeks, the parties finally resolved the claims on August 17, 2018.

### Summary of the Proposed Settlement

The parties executed the Settlement Agreement filed with the Court under seal. The critical terms of the Settlement Agreement are summarized below. In sum, Plaintiff agreed to fully settle the wage and hour claims of all collective action members and members of the class sought in exchange for Great Circle paying the maximum total specified in the parties' Settlement Agreement ("Gross Settlement Fund"). Agreement, § 1(P). The Gross Settlement Fund includes lost wages, statutory damages, a modest service award, attorneys' fees and litigation costs. *Id.* All collective action members and all class Members who have timely file a claim will receive a proportional share of the recovery. *Id.*, ¶ 2(B).

3

The proportional payout to collective action members and class members who have timely submitted a claim has been calculated from a Net Settlement Fund determined by subtracting the following from the Gross Settlement Fund: (i) class counsel's attorneys' fees equal to one-third (1/3) of the total amount recovered, (ii) class counsel's costs and expenses of $7,732.11 (or less depending on the mediator's final bill), (iii) Plaintiff's incentive award as specified in the Settlement Agreement, and (iv) settlement administration costs; all subject to the Court's approval *Id.,* § 2, § 4(C).

The Net Settlement Fund shall be distributed equitably based on wage rates and total weeks worked as an FCCM during the recovery period. *Id.,* ¶ 2(B).

The limited release encompasses "all wage and hour-related claims asserted, or that could have been asserted, in the Litigation or under federal, state, or local law that were, or could have been, brought in the Litigation, through the Effective Date, including, without limitation, claims for minimum wages, overtime wages, liquidated damages, non-payment of wages, meal or rest periods, paid and unpaid time off, waiting time penalties, unfair business practices, and any other pay practices of any kind related to the wage and hour claims that were or could have been brought by a Settling Plaintiff in these proceedings against Defendant and the Released Parties, whether based upon federal, state, local, constitutional, statutory, or common law, or any other law, rule, or regulation, including but not limited to, claims under Mo. Rev. Stat § 290.500, et. seq.; Mo. Code Regs. Ann. tit. 8, § 30-4.020; and all of their implementing rules and regulations and interpretive guidelines, and all claims for penalties or restitution relating to or derivative of any or all of those laws." *Id.,* ¶ 3(B). Additionally, collective action members and class members who submit a claims will release "any claims under the FLSA, 29 U.S.C. § 201 et seq." *Id.*

4

Based on her initiative and service to both the collective action members and the putative class, including working diligently with counsel to investigate, prosecute and resolve the claims, Named Plaintiff Bush seeks a modest incentive award.  Agreement, § 2(C).

The settlement provides for class counsel to seek fees equal to one-third (1/3) of the maximum settlement amount plus their out-of-pocket costs.  *Id.,* ¶¶ 2(D).

## Notice Process and Results

Following the Court's preliminary approval of the settlement, the settlement administrator, RG/2 Claims Administration LLC ("RG/2"), mailed the Court-approved notices of settlement and claim forms to 193 FCCMs.  Ex. 3, ¶ 7 & 8.  There was only one notice returned for which no new address could be located.  *Id.*, ¶ 9. Ultimately, 85 claims were received, for a 44% claims rate (85 / 193 = 44%), including the 23 FCCMs who previously opted-in to the FLSA claim.  *Id.*, ¶ 12.  No class member requested exclusion from the class and no class member objected.  *Id.*, ¶¶ 10-11.

## Argument and Authorities

### A.    The Court Should Grant Final Approval of The Parties' Settlement Agreement

"Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l. Bank*, 216 U.S. 582, 595 (1910); *Lidell by Lidell v. Bd. of Educ.*, 126 F.3d 1049, 1056 n.9 (8th Cir. 1997) ("The general principal that the law favors settlement agreements has been recognized for over 100 years"). Rule 23(e) of the Federal Rules of Civil Procedures provides that the Court must approve any settlement of a class action. In a class action, the "district court acts as a fiduciary, serving as a guardian of the rights of absent class members." *In re: Wireless Telephone Federal Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005) ("As a general rule, Missouri applies regulatory interpretations consistent with federal law. *See, e.g.* 8 CSR 30-4.010(1) (incorporating federal regulations and interpretive rules). *Grunin v. Int'l. House of Pancakes*, 513 F.2d 114, 123

(8th Cir. 1975). The ultimate determination as to whether a proposed class action settlement warrants approval resides in the Court's discretion. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). Basically, the same standards apply regarding approval of FLSA settlements. *Hill v. World Wide Tech. Holding Co., Inc.,* 2012 U.S. Dist. LEXIS 153264, *3-4 (E.D. Mo. Oct. 25, 2012). As discussed below, in addition to the reasons set forth in the preliminary approval process, the Settlement Agreement is well within the range of reasonable and final approval is warranted.

**B.      The Rule 23 and FLSA Settlement is Fair, Reasonable, and Adequate**

The Eighth Circuit applies a four-factor test to determine whether a class action settlement is fair, reasonable, and adequate. The test assesses:

1.      the merits of the plaintiff's case, weighed against the terms of the settlement;

2.      the defendant's financial condition;

3.      the complexity and expense of further litigation; and

4.      the amount of opposition to the settlement.

*Wireless Tel.*, 396 F.3d at 932. "The most important consideration in deciding whether a class settlement is fair, reasonable, and adequate is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement." *Id.* (*quoting Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1150 (8th Cir. 1999)). The Settlement Agreement meets all four of these factors.

Although Rule 23 does not govern FLSA collective action claims, the standard for approving an FLSA collective action settlement is similar: To approve an FLSA settlement, the Court must find that (1) the litigation involves a *bona fide* dispute, (2) the proposed settlement is fair and equitable to all parties concerned and (3) the proposed settlement contains an award of reasonable attorney fees. *Grove v. ZW Tech, Inc*., 2012 U.S. Dist. LEXIS 147748, *6-7 (D. Kan. Oct. 15,

2012). To determine whether a settlement of an FLSA collective action is fair and equitable to all parties, *courts apply the same fairness factors as apply to a proposed class action settlement under Rule 23*." *Hill,* 2012 U.S. Dist. LEXIS 153264, *3-4 (emphasis added). Applying the factors set forth in *Grove* and *Hill,* there is no question this litigation involves a *bona fide* dispute, the settlement is fair and equitable for the reasons stated below, the settlement agreement provides for a reasonable award of attorneys' fees and costs.

### 1. Merits of Named Plaintiff's Case Balanced by the Terms of the Settlement

The strength of the FCCMs' claims balanced against the amount offered in settlement favors a finding that the proposed settlement is fair, reasonable, and adequate. The temptation to conduct a full trial on the merits must be resisted. *See Gruinin v. Int'l. House of Pancakes*, 513 F.2d 114, 123-24 (8th Cir. 1974) ("neither the trial court in approving the settlement nor this Court in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute."). As one court has explained, "[i]t is not necessary, nor expected, that plaintiffs obtain through settlement all that would have been realized through a victorious trial. It is the intrinsic nature of a settlement that no party will completely fulfill its absolute goals, *Fox v. Glickman Corp.*, 253 F. Supp. 1005, 1012 (S.D.N.Y. 1966), but rather that, after considering all the relevant circumstances, it is resolved by all involved that it is in their best interests to terminate the litigation on the basis of a fair and reasonable compromise." *Stull v. Baker*, 410 F. Supp. 1326, 1332 (S.D.N.Y. 1976). This settlement is a fair and reasonable compromise of the claims alleged.

Plaintiffs allege that Defendant misclassified their FCCMs as "exempt" from overtime wage laws, and thereby wrongfully denied them overtime pay. Plaintiffs further allege that they worked substantial overtime. Defendant adamantly disputes these allegations, including presentation of

documents showing minimal amounts of overtime worked.  It is impossible to accurately predict whose witnesses a jury would find more credible or persuasive. Furthermore, Defendant asserts that the likelihood of *all* class members recovering at trial is very small. *See Thiebes v. Wal-Mart Stores, Inc.*, 2004 U.S. Dist. LEXIS 15263, at *3 (D. Or. Jul. 26, 2004) (only 74 of more than 400 employees received an award from the jury in a wage and hour case). The Settlement Agreement, by contrast, provides an immediate award to all class and collective action members who chose to timely submit claims.  Counsel for the parties believe that the proposed settlement is fair, reasonable, and adequate when balanced against the strength and weaknesses of each side's case and the burdens involved in presenting such proof. Accordingly, this factor weighs in favor of approval of the parties' settlement.

## B. Defendant's Financial Conditions

Defendant can afford to pay the settlement amount. *See e.g., Wireless Tel.*, 396 F.3d at 933 (summarily assessing this factor in one sentence by stating that the defendant could afford to pay the settlement). However, Defendant has represented that the settlement represents the maximum amount it is able to pay, considering that it is a non-profit social services provider with very limited available funds.  Accordingly, this factor weighs in favor of approval of the parties' settlement.

## C. The Complexity And Expense Of Further Litigation

The time and cost of further litigation in this case also favors settlement. *See In re Charter Commun's.*, *Inc.,* 2005 U.S. Dist. LEXIS 14772, *26 (E.D. Mo. Jun. 30, 2005) ("The possible length and complexity of further litigation is a relevant consideration to the trial court in determining whether a class action settlement agreement should be affirmed."). With continued litigation, motion practice and appeals, this case could easily continue for years. Indeed, were it not for this settlement, the parties would proceed to vigorously litigate this case, as the merits of

the allegations are fully disputed. Continued litigation would require class certification briefing pursuant to Fed. R. Civ. P. 23, numerous depositions, likely expensive expert witness testimony to quantify damages and dispositive motions filed by both sides. Moreover, even if these matters survived a dispositive motion or a subsequent motion for decertification of a class, a trial in this case would require an extraordinary amount of time, energy, expense, and resources. Defendant would likely introduce evidence from each of its six regions across the State of Missouri to show minimal overtime work. Plaintiffs would seek to introduce representative evidence to show that overtime work was regular and substantial. *See also, Thiebes*, 2004 U.S. Dist. LEXIS 15623, at *2-4 (explaining that the bifurcated trial process used two juries and lasted over a year). Furthermore, the appeals process would further delay any judgment possibly obtained at trial. When balanced against the tremendous time and cost associated with continued litigation, the immediate recovery provided for with this settlement favors a determination that the settlement is fair, reasonable, and adequate. Plaintiffs' counsel affords great weight to Defendant's documentary showing of minimal overtime work and the lack of overtime work in many workweeks resulting from Defendant's practice of granting "comp time," meaning time off earned based on work performed in prior weeks. *Wireless Tel.,* 396 F.3d at 933 (finding this factor satisfied where the "case had yet to complete discovery, much less the inevitable appeals that would have been necessary before a final resolution"). Given the extensive costs that will result from continued litigation of this case, when weighed against a fair, reasonable, and equitable settlement, this factor weighs in favor of approval of the parties' proposed and fully negotiated settlement.

## D. The Amount of Opposition to the Settlement

9

There have been no objections to the Settlement Agreement and no class member has opted out. *See Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455 (E.D. Pa. 2008) (finding that the absence of any objections weighed in favor of approving a class action). *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 853 (E.D. La. 2007) ("The absence or small number of objections may provide a helpful indication that the settlement is fair, reasonable, and adequate."); *Retsky Family Ltd. Partners v. Price Waterhouse LLP*, 2001 U.S. Dist. LEXIS 20397, at *4-5 (N.D. Ill. Dec. 10, 2001) ("The absence of objection to a proposed class settlement is evidence that the settlement is fair, reasonable and adequate").

## E. The Amount of the Settlement

Prior to the second mediation, Plaintiff's calculated actual damages roughly in the range of the settlement eventually amount recovered over the longest applicable FLSA or MMWL statutory limitations period. Moreover, the average amount recovered by each claimant is substantial. This is an excellent result. Courts routinely approve settlement which recover a much lower percentage of the maximum amount of wages due. See, *e.g.*, *Jimenez v. Pizzerias, LLC,* 2017 U.S. Dist. LEXIS 129820, *11 (S.D. Fla. Aug. 14, 2017) (approving settlement of same claim equivalent to approximately two-thirds of the maximum value of *actual* damages (unpaid minimum wages)); *Fuentes Cordova v. R&A Oysters, Inc.,* 2016 U.S. Dist. LEXIS 123042, *2-3 (S.D. Ala. Sept. 12, 2016) (finding settlement constituting 50% recovery of *wages* (actual damages) as estimated by expert report to be fair and reasonable); *Nall v. Mal-Motels, Inc.,* 2014 U.S. Dist. LEXIS 197441, *8 n.8 (M.D. Fla. Apr. 7, 2014) (finding settlement constituting 40% of damages claimed was fair and reasonable settlement); *Vigna v. Emery Fed. Credit Union*, 2016 U.S. Dist. LEXIS 166605, *8 (S.D. Ohio Dec. 2, 2016) ("The Court agrees that nearly all of the terms of the Settlement are fair and reasonable, particularly in light of the fact that the total Settlement Fund constitutes a 55%

recovery of *wages* [alone, not liquidated damages] as estimated by the expert's report."); *Millan v. Cascade Water Servs.,* 310 F.R.D. 593, 611-12 (E.D. Cal. 2015) (approving FLSA settlement equating to approximately 46% of the maximum damages calculated by the plaintiffs (collecting cases)). Likewise, the parties' settlement reflects a beneficial compromise for class members, considering the inherent risks, costs, and delays associated with trial and probable appeal. Accordingly, the parties' settlement will provides meaningful relief to the class, if approved.

## III.     The Service Award is Warranted

The Settlement Agreement provides for a reasonable service award of $10,000.00 to the Named Plaintiff. Service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publg. Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009); *see also Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1068 (D. Minn. 2010) (service awards "promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits"); *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir. 2012) (service awards are appropriate in FLSA collective actions for same reasons as in Rule 23 class actions).

Factors bearing on the decision of whether to grant a service award include, as relevant here, the actions taken by the named plaintiff to protect the interests of all other opt-in plaintiffs, the degree to which the opt-in plaintiffs have benefited from those actions, and the amount of time and effort the named plaintiff expended on the litigation. *Staton v Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Here, Named Plaintiff Melisa Bush substantially assisted counsel in achieving this settlement on behalf of all of the Opt-In Plaintiffs. She first sought and obtained counsel with specific experience misclassification and overtime claims and initiated this action. She provided ongoing guidance to counsel. From the beginning, she endeavored to protect the interests of all FCCMs

and to obtain a substantial recovery on their behalf. Ms. Bush participated throughout every round of settlement efforts, including two day-long mediations, and six weeks of subsequent negotiations. Ex. 1, ¶ 12; Ex. 2, ¶ 6. The other claimants have substantially benefitted from Ms. Bush's initiative and efforts. In light of these efforts, a modest service award is justified. The award also falls well within the range of other service awards typically approved by courts in this Circuit. *Braden v. Foremost Ins. Co. Grand Rapids,* 2018 U.S. Dist. LEXIS 176236, *23-24 (W.D. Ark. Oct. 9, 2018) (awarding $10,000.00 service award as "fair and reasonable"); *In re Iowa Ready-Mix Concrete Antitrust Litig.,* 2011 U.S. Dist. LEXIS 130180, *27 (N.D. Iowa Nov. 9, 2011) (awarding six named plaintiffs $10,000.00 service awards each); *Sauby v. City of Fargo,* 2009 U.S. Dist. LEXIS 139836, *8 (D.N.D. Dec. 14, 2009) (approving $10,000.00 service award as "fair and reasonable"); *Zilhaver v. UnitedHealth Grp., Inc.,* 646 F.Supp.2d 1075, 1085 (D. Minn. 2009) (approving service awards of $15,000.00 to named plaintiffs); *Wolfert v. UnitedHealth Grp., Inc.,* 2009 U.S. Dist. LEXIS 74261, *7 (E.D. Mo. Aug. 21, 2009) (approving $30,000.00 service award). Notably, Ms. Bush will provide Defendant a general release.

Moreover, the notices of settlement sent to all opt-in Plaintiffs specifically informed them of the proposed service award to the named Plaintiff and no opt-in Plaintiff objected to that award.

Accordingly, the Court should grant final approval of Plaintiffs' service award request.

## IV. The Legal Fees and Costs Are Appropriate

### A. A Reasonable Percentage of the Fund Recovered Is the Preferred Approach for Awarding Attorneys' Fees in Common Fund Cases

For their efforts on behalf of the class, Plaintiffs' attorneys are applying for compensation from the Settlement Fund on a percentage basis. The "percentage method" is the preferred method of fee recovery in this Circuit.

It has long been recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the

12

fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The purpose of this doctrine is to avoid unjust enrichment and to spread litigation costs proportionately among all the beneficiaries. *Id*. This common fund doctrine is firmly rooted in American case law. *See, e.g., Trustees v. Greenough*, 105 U.S. 527 (1882); *Central R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885); *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

"In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved but also 'well-established.'" *In re Xcel Energy, Inc. Sec. Derivative, ERISA Litig.,* 364 F.Supp.2d 980, 991 (D. Minn 2005); see also *Johnson v. Comerica Mortg. Corp*., 83 F.3d 241, 246 (8th Cir. 1996) (approving the percentage method of awarding fees). Applying *Johnson*, courts in this Circuit routinely state their preference for and apply the percentage-of-the-fund approach in awarding attorneys' fees in common fund cases. *See e.g.*, *Petrovic,* 200 F.3d 1140, at 1157; *In re U.S. Bancorp Litig*., 291 F.3d 1035, 1038 (8th Cir. 2002); *In re Xcel Energy*, 364 F.Supp.2d at 993.

Compensating counsel in common fund cases on a percentage basis makes good sense. It is customary for contingent fee attorneys to be compensated on a percentage-of-the-recovery method. It rewards efficiency and provides counsel with a strong incentive to effectuate the maximum possible recovery under the circumstances. *See In re Xcel Energy,* 364 F.Supp.2d at 993; *Kirchoff v. Flynn*, 786 F.2d 320, 325-26 (7th Cir. 1986). Use of the percentage method decreases the burden imposed on the court by the "lodestar" method and assures that class members do not experience undue delay in receiving their share of the settlement.

Many courts within this Circuit and the neighboring circuits have awarded fees in common fund cases in line with the one-third (1/3) requested here. *See* citations below.

### B. The "Percentage Method" is both Appropriate and Commonly Used in Wage and Hour Claims

"[I]n wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award." *deMunecas v. Bold Food, LLC*, 2010 U.S. Dist. Lexis 87644, *20-21 (S.D.N.Y. Aug. 23); *see also, e.g., In re Microstrategy*, 172 F.Supp.2d at 785 n.16 (identifying FLSA as a remedial statute appropriate for application of the "common fund" doctrine); *Payson v. Capital One Home Loans, LLC*, 2009 U.S. Dist. Lexis 88468, *6-8 (D. Kan. Sept. 24) ("the preferred method" of awarding fees in FLSA case is the common fund approach). "Fee awards in wage and hour cases are meant to 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *deMunecas*, at *20. Enforcement of the wage and hour laws "relies on prosecution by 'private attorneys general,' *Deposit Guar. Nat'l. Bank v. Roper*, 445 U.S. 326, 338-39 (1980), [and] attorneys who fill the private attorney general role must be adequately compensated for their efforts." *deMunecas*, at *21. "If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk." *Id.* (citing cases). Here, class counsel risked substantial time and effort and advanced all costs of litigation, with no ultimate guarantee of compensation, and should therefore be entitled to an attorneys' fee award that exceeds their lodestar amount in this case. Ex. 1, ¶ 15; Ex. 2, ¶ 13.

The settlement provides Plaintiffs' counsel a reasonable multiplier of about 2.0, which falls well within the range of multipliers approved within this Circuit. *See, e.g., Huyer v. Buckley,* 849 F.3d 395, 398 (8th Cir. 2017) (finding 1.82 multiplier reasonable); *Nelson v. Wal-Mart Stores, Inc.,* 2009 U.S. Dist. LEXIS 71253, *5 (E.D. Ark. Aug. 12, 2009) (approving multiplier of 2.5 and citing cases within the Eighth Circuit approving multipliers of up to 5.6); *In re Xcel Energy, Inc. Sec. Litig.,* 364 F.Supp.2d 980, 999 (D. Minn. 2005) (4.7 multiplier); *In re Charter Commun's., Inc.,* 2005 U.S. Dist. LEXIS 14772, *54-57 (E.D. Mo. Jun. 30, 2005) (5.6 multiplier); *In re St.

*Paul Travelers Sec. Litig.,* 2006 U.S. Dist. LEXIS 23191, *11 (D. Minn. Apr. 25, 2006) (multiplier of 3.9); *Dekro v. Stern Bros. & Co.,* 571 F.Supp. 97, 108 (W.D. Mo. 1983) (multiplier of 2.0).

### C.  The Relevant Factors Justify a Fee Award of One-Third of the Common Fund

#### 1.  The Result Obtained for the Class

The Supreme Court recognizes that the result achieved is "the most critical factor" in calculating a reasonable fee award is the degree of success obtained.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *see also* Fed. R. Civ. P. 23(h) advisory committee notes to 2003 amendments (explaining that the "fundamental focus" in determining a common fund attorneys' fee award "is the result actually achieved for class members").

Through diligent pursuit of the claims and skillful negotiation, class counsel has provided a successful result for the class and collective by creating a settlement fund.  The settlement was achieved through efforts of class counsel and without the necessity of overly prolonged litigation and trial, justifying a fee equal to one-third (1/3) of the settlement fund created through settlement. The settlement delivers a per class member recovery within the realm of results which they could reasonably expect to achieve, assuming a successful trial.  The fact that these substantial amounts are available to class members without the uncertainty and burden of trial, and are being delivered through this settlement rather than after years of additional litigation, qualifies the results of this settlement as excellent under any reasonable assessment.  "The certainty of fixed recovery by way of agreement is often preferable to the vagaries of what might be achieved by a trial."  *Seiffer v. Topsy Int'l, Inc.,* 70 F.R.D. 622, 629 (D. Kan. 1976).

15

Moreover, given the defenses on liability and damages raised by Defendant, the settlement achieved may be equal to or more than the class or collective would have recovered if it had proceeded to trial. "The certainty of fixed recovery by way of agreement is often preferable to the vagaries of what might be achieved by a trial." *Seiffer v. Topsy Int'l, Inc.,* 70 F.R.D. 622, 629 (D. Kan. 1976). In sum, class counsel respectfully submit that the class and collective could not have gotten better representation and the result achieved reflects that fact.

### 2. The Quality, Skill, and Efficiency of the Attorneys Involved

Class counsel is experienced in wage and hour litigation, including misclassification claims. Ex. 1, ¶¶ 4-5; Ex. 2, ¶¶ 8-9. Through their experience, class counsel were able to efficiently identify, focus and argue the issues, resulting in a favorable resolution. *Id.* The quality and efficiency of class counsel's work on this case was superior and is reflected in the result. Through many hours of research and fact investigation, class counsel developed a persuasive case, and during negotiations with Defendant demonstrated that fact. This recovery for the class and collective is a direct result of effective lawyering and the acumen and diligence of class counsel. Such skill should be rewarded. *See J.N. Futia Co. v. Phelps Dodge Indus., Inc.*, 1982 U.S. Dist. Lexis 15261, *16-20 (S.D.N.Y. Sept. 17, 1982).

### 3. The Difficulty and Risks Attendant to the Litigation.

From the outset, class counsel faced many risks in pursuing this litigation to a successful conclusion. Defeat was a risk at numerous stages: conditional certification under the FLSA, de-certification, class certification, dispositive motions, trial, and appeal, the significant potential of Defendant being unable to pay a judgment. Such risk should be recognized. In addition, had this settlement not been achieved, Plaintiffs faced additional expensive discovery and motion practice, lengthy fact and expert discovery, a costly jury trial, and possibly lengthy post-trial appeals, with

16

ultimate uncertainty of success.  Numerous cases have recognized that these types of risks are

important factors in determining the fee award.  *See In re Xcel*, 364 F. Supp. 2d at 994 (noting

complexity of class action as factor in determining reasonableness of fee award); and *In re Charter

Commun's, Inc.*, 2005 U.S. Dist. LEXIS 14772, at *47-48 (finding that class actions "are by their

nature, complex and difficult to prove.").  The complexity and risks of this action clearly support

the fee sought.

There exist additional complexities and difficulties of litigating wage and hour claims.  The

individual plaintiffs are usually unable to pay attorney's fees or litigation costs.  The employer has

possession and control over most of the documentary evidence necessary to elucidate the plaintiffs'

case fully.  The employer usually has ready access and control over witnesses who are important

to the case.

### 4.  The Time and Labor Involved

Class counsel have spent a considerable time, energy and resources in order to properly and

adequately investigate the facts and legal consequences of pursuing this action, researching and

briefing the merits of the claims and defenses, arguing for collective action, preparing discovery,

reviewing voluminous data produced by Defendant, resolving the claims, etc.  To date, Plaintiffs'

law firms have spent more than 310 hours prosecuting this litigation.  Ex. 1, ¶ 13; Ex. 2, ¶ 14.

This case was prosecuted efficiently, and its demands did not consume all of counsel's time

and energy.  However, the significant hours devoted to this lawsuit necessarily precluded class

counsel from spending that time on other cases.  *Id.*; *see In re Sprint Corp. ERISA Litig.*, 443 F.

Supp. 2d 1249, 1270 (D. Kan. 2006).

Wage and hour collective actions are, by their very nature, complicated and time-consuming.

Any law firm undertaking representation of large number of affected employees in wage and hour

actions inevitably must be prepared to make a substantial investment of time, energy, and resources. Due also to the contingent nature of the customary fee agreement, lawyers must be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. The demands and risks of this type of litigation sometimes overwhelm the resources, and deter participation of, many traditional claimants' firms. Ex. 1, ¶ 16; Ex. 2, ¶ 15.

### 5. The Complexity of this Action's Factual and Legal Questions

Courts recognize that the complexity and difficulty of the issues in a case are significant factors to be considered in making a fee award. *See Johnson v. Georgia Hwy. Express, Inc.,* 488 F.2d 714, 718 (5th Cir. 1974). There were complex issues of law and fact involved such as Defendant's qualification for the overtime exemptions claimed, collective action certification, similarity of claims, determining the extent and percentage of non-compensable time, the applicable overtime rate for employees, employer notice, willfulness, and multiple credibility battles. Given the inherent complexities of a wage and hour collective action, the fee requested is more than fair.

### 6. The Contingent Nature of the Case and the Financial Burden Carried by Class Counsel

A determination of a fair fee must include consideration of the contingent nature of the fee and the difficulties to overcome in obtaining a settlement.

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over the normal hourly rates for winning contingency cases. See Richard Posner, *Economic Analysis of Law*, § 21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).

Class counsel have received no compensation during the course of this litigation and have spent a substantial amount of time to obtain this result and costs (including translator services to communicate with the largely immigrant-based plaintiff class). Ex. 1, ¶¶ 13, 15; Ex. 2, ¶ 8.

**7.  Awards in Similar Cases**

Many courts around the nation, including this district, award fees in wage and hour class claims at or very near the one-third (1/3) requested here.  *See, e.g., Caligiuri v. Symantec Corp.,* 855 F.3d 860, 865-66 (8th Cir. 2017) (affirming fee award that represented one-third of the total settlement fund); *Huyer v. Buckley,* 849 F.3d 395, 399 (8th Cir. 2017) (same); *Martinez v. Medicredit, Inc.,* 2018 U.S. Dist. LEXIS 81818, *12-13 (E.D. Mo. May 15, 2018) (same); *Netzel v. W. Shore Grp., Inc.,* 2017 U.S. Dist. LEXIS 214868, *20-24 (D. Minn. May 8, 2017) (same, collecting cases); *Edwards v. Orchestrate Hosp. Grp., L.L.C.,* 2017 U.S. Dist. LEXIS 91576, *9-10 (S.D. Iowa Feb. 23, 2017) (same); *Barfield v. Sho-Me Power Elec. Coop.,* 2015 U.S. Dist. LEXIS 70166, *12-13 (W.D. Mo. Jun. 1, 2015) (collecting cases from the Eighth Circuit in which courts found that one-third of the common settlement fund was a reasonable attorneys' fee, plus separate reimbursement for costs).

In addition, the requested fees reflect the private marketplace, a result repeatedly encouraged by the courts.  *See In re Cont'l. Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992).  In private litigation, attorneys regularly contract for contingent fees between 30% and 40% directly with their clients.  *See Blum*, 465 U.S. at 903 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers."); *In re M.D.C. Holdings Sec. Litig.*, 1990 U.S. Dist. Lexis 15488, *22 (S.D. Cal. Aug. 30, 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery.").  These percentages are the prevailing market rates throughout the United States for contingent representation.

### 8. No Objections

After notice and disclosure, no class member has objected to the requested fees.

### 9. Plaintiffs' Counsel's Expenses are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained

Class counsel request reimbursement for expenses incurred in prosecuting this litigation on behalf of the class and collective in an aggregate amount of $7,732.11 (or less depending on the mediator's final bill).  Ex. 1, ¶ 14; Ex. 2, ¶ 14.

### 10. Defendant does not object to the amount requested by Plaintiffs' Counsel

Defendant expressly consents to the requested fee award, have reviewed this document and will not oppose this motion.

### Conclusion

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion and issue an Order(s) that:

1.  Finally approves the parties' settlement as being fair, reasonable, adequate and in the best interests of class members and a fair and reasonable resolution of *bona fide* dispute under the Fair Labor Standards Act ("FLSA"), the Missouri Minimum Wage Law ("MMWL"), and Missouri common law;

2.  Directs the parties and the settlement administrator to administer the settlement in accordance with its terms;

3.  Approves Name Plaintiff Bush's service award per the terms of the parties' settlement agreement;

4.  Approves the payment of attorneys' fees, costs and expenses per the terms of the parties' settlement agreement; and

5.     Enters final judgment pursuant to Fed. R. Civ. P. 54 in this action dismissing all of the Plaintiffs' claims, the class action claims and the collective action claims on the merits with prejudice.

Respectfully submitted,
**WEINHAUS & POTASHNICK**
     */s Mark Potashnick*
Mark A. Potashnick (Mo. Bar # 41315)
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone:(314) 997-9150
Facsimile: (314) 997-9170
Email:     markp@wp-attorneys.com

and

Eli Karsh (Mo. Bar # 43061)
LIBERMAN, GOLDSTEIN & KARSH
230 S. Bemiston Ave., Suite 1200
St. Louis, MO 63105
Telephone:    (314) 862-3333, ext. 13
Facsimile: (314) 862-0605
Email:     elikarsh@aol.com
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing was served on all counsel of record via the Court's electronic case filing system on the date reflected in the Court's electronic case filing records.

       */s Mark Potashnick*